UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CARL FORD, ALFONZA DARNELL, )
)
    Plaintiffs, )
)
vs. ) Civil Action No. CV96-S-1783-NE
)
ALABAMA A & M UNIVERSITY, )
)
    Defendant. )

FILED
98 FEB 17 AM 8:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
FEB 17 1998

MEMORANDUM OPINION

    Carl Ford and Alfonza Darnell claim that Alabama Agricultural & Mechanical University refused to hire them as assistant residence hall directors in retaliation for charges of discrimination they filed with the EEOC. They seek damages pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. The action presently is before the court on defendant's motion for summary judgment, and, motion to strike portions of plaintiffs' evidentiary submissions. Upon consideration, this court concludes that both motions are due to be denied.

### I. MOTION TO STRIKE

    The University claims that plaintiffs' exhibits 3 through 23 and 28 should be stricken because they are unauthenticated. Of those documents, this court only will consider exhibit 23 in

reaching its decision on the motion for summary judgment.[1] Thus, this court will limit plaintiff's motion to strike to exhibit 23.

The rule in this circuit is that all exhibits considered at the summary judgment stage must be authenticated. *See First National Life Insurance Company v. California Pacific Life Insurance Company*, 876 F.2d 877, 881 (11th Cir. 1989); *White v. Wells Fargo Guard Services*, 908 F. Supp. 1570, 1579 (M.D. Ala. 1995); *Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908, 911 (M.D. Fla. 1995)("for a document to be considered in support of or in opposition to a motion for summary judgment, it must be authenticated by an affidavit that meets the requirements of the summary judgment rule"); *Burnett v. Stagner Hotel Courts, Inc.*, 821 F. Supp. 678, 683 (N.D. Ga. 1993); *aff'd*, 42 F.3d 645 (11th Cir. 1994)("In order for a document to be considered in support of or opposition to a motion for summary judgment it must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence").

Exhibit 23 is a copy of the University's EEOC position statement regarding Alfonza Darnell. That statement is drafted on the letterhead of the University's attorney of record. This court therefore finds "evidence sufficient to support a finding that the

---

[1] The other exhibits consist of EEOC determinations on plaintiffs' retaliation claims and various documents supporting plaintiffs' prior claims of gender discrimination. The EEOC determinations previously were supplied in response to an order entered October 18, 1996, without objection by defendant. They thus would be part of the record, even if this court elected to grant defendant's motion to strike. The remaining documents, while relevant, play no part in this court's analysis of plaintiffs' retaliation claims.

2

matter in question is what its proponent claims" and, therefore, will consider Exhibit 23. *Fed.R.Evid.* 901(a).[2]

## II. BACKGROUND

The University hired plaintiffs as assistant residence hall directors in February of 1989. Two years later, on March 25, 1991, plaintiffs learned their contracts would not be renewed for the 1991-92 school year. (Garner affidavit at 1-2.) The positions allegedly were eliminated as one means of dealing with a budget shortage. (*Id.* at 2; Gibson affidavit at 1.) Plaintiffs believed the University's downsizing policy discriminated among residence hall employees on the basis of gender.

Alfonza Darnell relates that he was "very vocal" in opposing the policy. (Darnell affidavit ¶ 4.) He claims that he "wrote many letters to university and state officials," and that he directly voiced his suspicion of gender discrimination to the University's director of residential/life housing, Rosemary Denby. (*Id.*)

Carl Ford claims that he "supported Alfonza Darnell in his campaign to pay equitable wages to male counselors and not to subject male counselors to discriminatory layoffs." (Ford affidavit ¶ 5.) Part of that "support" was expressed by Ford's refusal "to sign a memorandum to James Garner, the Director of Housing, taking a position against Mr. Darnell." (*Id.*)

---

[2] Defendant also claims that "these documents contain hearsay which is not admissible under Rules 801 and 802 of the Federal Rules of Evidence." This court disagrees with that argument to the extent it implicates exhibit 23. The position statement is "a party's own statement in ... a representative capacity...." Fed.R.Evid. 801(d)(2)(A).

3

Both plaintiffs also filed charges of discrimination with the Equal Employment Opportunity Commission, alleging gender discrimination in the elimination of their positions. In May of 1993, they commenced an action in the United States District Court for the Northern District of Alabama. That action was dismissed on June 23, 1993, for lack of subject matter jurisdiction.[3]

During July of 1993, the University's department of human resources advertised openings for the positions of residence hall director and assistant residence hall director. (Clarke affidavit at 1.) Carl Ford submitted an application to the University's director of human resources Lamar Clarke. When doing so, Ford expressed his belief that he possessed a "right of first refusal" to the assistant residence hall director position. (Ford affidavit ¶ 12; Clarke affidavit ¶ 3.) Ford claims that Clarke asked whether he was "one of the counselors that filed a class action against the University." (Ford affidavit ¶ 13.)[4]

---

[3] Judge James Hughes Hancock construed plaintiffs' complaint as stating claims

> for breach of contract and for some form of tort arising out of the conduct associated with the breach. There is no diversity of citizenship. Plaintiffs' vague allegations of violations of their civil rights are insufficient to give this court jurisdiction of the action under 28 U.S.C. § 1331, particularly since a breach of contract is not actionable under §§ 1983, et seq.
>
> For the foregoing reason, the claims of all plaintiffs against all defendants will be dismissed without prejudice to pursue any such claim in an appropriate state court.

*Darnell v. Alabama A&M University*, No. CV93-H-0968-NE, (N.D. Ala. June 23, 1993).

[4] Clarke denies any knowledge of a prior EEOC charge, but fails to deny knowledge of the federal action by Ford and Darnell. (*See* Clarke affidavit ¶ 5.)

4

Under University policy, an employee terminated pursuant to a reduction in force is entitled to a "right of first refusal" in the same or similar position for a period of eighteen months from the date of termination.[5] (Clarke affidavit ¶ 3.) If the employee exercises that "right," he or she should be offered the position in preference to other applicants. (Id.) Clarke determined that Ford's "right of first refusal" had expired, however, because more than eighteen months had elapsed since the elimination of his position. (Id. ¶ 4.) Ford was informed of that determination, but he still was allowed to interview for the residence hall positions.

Carl Ford and Alfonza Darnell were two of thirteen applicants interviewed for the residence hall positions by the "director of residential/life housing," Rosemary Denby. (Denby affidavit ¶¶ 1, 2.) Ms. Denby "had the authority to recommend for hiring, those individuals she thought to be best qualified." (Clarke affidavit ¶ 8.)

Ms. Denby offers the following testimony regarding Carl Ford's interview:

> I did not select Ford because he was hostile during the interview and adamantly declared that the University had no choice but to hire him. Because of this behavior, I felt that Ford was not interested in interviewing and, instead, acted as if he was entitled to the job. Ford continued to carry on in this manner even after I explained to him that I did not have the authority simply to give him his job back. However, Ford did not seem to care and continued to demand his job back. Based on Ford's behavior during the interview, I concluded that

---

[5] Ford and Darnell dispute the university's contention that there is an eighteen month limitation on the "right of first refusal." (Brief in opposition to summary judgment at 13.)

5

> Ford was not cooperative and unwilling to work with others nor did he have the University's best interest in mind. Accordingly, I concluded that Ford was not one of the most qualified applicants.

(Denby affidavit ¶ 6.) In contrast, Alfonza Darnell conducted himself in an appropriate manner during his interview. (Denby affidavit ¶ 7.) Even so, Ms. Denby still determined (after reviewing Darnell's resume, application, and interview) that other individuals were more qualified. (*Id.*)

Ford and Darnell filed charges of discrimination with the EEOC, alleging the University refused to rehire them in retaliation for their prior discrimination claims. The EEOC issued a notice of right to sue to Carl Ford on April 17, 1996,[6] and this action was commenced on July 11, 1996.

### III. DISCUSSION

The analysis of Title VII retaliation claims is conducted in the same manner as the analysis of disparate treatment claims. *See Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600, *reh'g denied*, 800 F.2d 267 (11th Cir. 1986). Thus, when a plaintiff relies on circumstantial evidence to prove a charge of unlawful discrimination, as is the case here, the evaluation of that proof occurs within a framework developed by the Supreme Court in three decisions: *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

---

[6]This court has found no evidence in the record indicating that Darnell received a notice of right to sue from the EEOC, but plaintiffs previously supplied this court with a copy of a March 28, 1995 determination by the EEOC finding reasonable cause to believe Darnell's charge of retaliation to be true. Defendant does not argue that either plaintiff failed to comply with Title VII's administrative prerequisites; therefore, this court will presume both plaintiffs are in compliance.

6

S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). See also *United States v. Crosby*, 59 F.3d 1133, 1135 (11th Cir. 1995). First, plaintiff's presentation of evidence establishing a *prima facie* case "creates a rebuttable presumption of unlawful discrimination." *Crosby*, 59 F.3d at 1135 (quoting *Armstrong v. Flowers Hospital, Inc.*, 33 F.3d 1308, 1313-14 (11th Cir. 1994). Next, the defendant may rebut the presumption established by a *prima facie* showing "by articulating a nondiscriminatory reason for its actions." *Id.* (citation omitted). Finally, if the defendant satisfies its burden of articulating a nondiscriminatory reason for its actions, the presumption of discrimination raised by a *prima facie* case "simply drops out of the picture," and the sole inquiry becomes whether the plaintiff has proven intentional discrimination. *Id.* (quoting *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749)

### A.   Prima Facie Case

A plaintiff may establish a *prima facie* case by providing evidence of: a statutorily protected expression; (2) an adverse employment action; and (3) a causal linkage between the protected expression and adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

7

1.  **Statutorily protected expression**

The University does not claim that plaintiffs failed to engage in "statutorily protected expression," but focuses only on plaintiffs' EEOC charges as their protected expressions. This court finds that plaintiffs' complaints to University officials and the prior federal court action also constitute "statutorily protected expression." See 42 U.S.C. § 2000e-3(a)(prohibiting retaliation for opposing unlawful employment practices or for participating in a proceeding under Title VII).

2.  **Causal connection**

The University alleges Ford and Darnell cannot establish the requisite causal connection between their prior complaints of gender discrimination and the University's subsequent refusal to hire them for the residence hall positions.

To establish a causal relation between protected activities and adverse employment actions, plaintiffs must merely show "the protected activity and the adverse action were not wholly unrelated." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)(citations omitted). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Id.* (citations omitted).

The University claims it was not "actually aware of the protected expression," because Rosemary Denby[7] had no knowledge of

---

[7]Each applicant recommended by Denby was hired. (Clark affidavit ¶ 10.)

8

plaintiffs' prior EEOC claims or complaints of discrimination. *See Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)(in cases involving a corporate defendant, plaintiff must show the agent who took the adverse action was aware of the plaintiff's protected expression). This court finds that there are genuine issues of material fact regarding Denby's knowledge.

The University submitted a position statement in response to Darnell's retaliation claims to the EEOC on April 11, 1994. That statement provided:

> After Denby had selected the individuals to be interviewed she personally checked the application of each prospective employee. Upon examining the application of Darnell, Denby reviewed her Department's file on Darnell from his previous employment with the University. ... Darnell also had shown an unwillingness to follow University administrative procedures or to utilize the University's chain of command. Based on Denby's knowledge of Darnell's previous job performance, and the fact that there were several other qualified applicants, Denby determined that Darnell would not be hired. In reviewing Darnell's file, Denby had noted that he had, at one time, filed some type of internal grievance. Denby made it a point to segregate documents relating to the grievance. She did not review any documents relating to Darnell's grievance as part of the process of considering Darnell for employment. <u>Though Denby was aware that Darnell had previously filed some type of University grievance, Denby had no knowledge of his prior EEOC charge</u>.

(Plaintiff's exhibit 23 (emphasis supplied).) Rosemary Denby's affidavit is not totally consistent:

> I never reviewed Ford or Darnell's personnel files prior to interviewing them in July 1993. I had no knowledge at the time I interviewed Ford or Darnell that either had any past disciplinary problems or that they had filed previous EEOC complaints.

9

> When I assisted in providing information for the University's position statements, I indicated that I had reviewed Ford and Darnell's personnel files, however, what I had intended to convey was that I had only reviewed these files after being advised of the retaliation charge filed with the EEOC and in preparation for providing information relative to the current charge.

(Denby affidavit ¶¶ 11, 12 (emphasis supplied).) While that affidavit disclaims knowledge of plaintiffs' "past disciplinary problems" and "previous EEOC complaints," it provides no insight into Ms. Denby's knowledge of plaintiffs' complaints of discrimination to University officials or their first federal action. Denby's deposition testimony also is inconsistent regarding her awareness of such complaints.

> Q. Okay. What about Mr. Darnell? Do you recall anything about him?
>
> A. Okay. Mr. Darnell, I recall, you know, hearing that he had filed a grievance.
>
> Q. Okay. Did you interview Mr. Darnell —
>
> A. Yes.
>
> Q. — for the job? At the time you interviewed him, were you aware that he previously filed an EEOC charge against the University?
>
> A. I was not familiar with that.
>
> Q. Okay. Were you aware that he was — he had any complaint concerning his employment with the University?
>
> A. I was not familiar with that.
>
> Q. Did Mr. Darnell ever inform you that he had, you know, filed a lawsuit against the University in the past?
>
> A. Are you referring to the interview?

10

Q. At any point.

A. Now, later, you know, I had heard that he had filed a grievance.

Q. Okay. What about prior to your interview with him?

A. No, I'm not familiar with that.

(Denby deposition at 28-29.)

Q. Did Mr. Darnell ever discuss his layoff with you?

A. Mr. Darnell discussed his layoff with everyone just in general talking.

Q. Were you aware that he believed that it was discrimination involved in his layoff?

A. Was I aware of?

Q. Yes. When you said that he —

A. Or do I believe?

Q. Were you aware of. I'm not asking whether you believe it's true or not. Were you aware that he thought that?

A. I was aware that was the consensus.

Q. The consensus among who?

A. People just in talking.

Q. And was one of those persons Mr. Darnell?

A. Correct.

(*Id.* at 49-50.)

Q. I'm sorry. Are you aware that these two gentlemen filed a charge claiming retaliation?

A. I'm aware that they had grievances.

Q. Okay. Grievances before you interviewed them?

A. For the reconstruction that was taking place.

11

Q.   Okay.  You're aware of that.  Were you aware of that at
         the time you interviewed them?

    A.   That they had grievances?

    Q.   Yes.

    A.   They were relieved of their duties.

    Q.   Uh-huh.

    A.   When they — I'm not understanding your question.

    Q.   Sure.  At the time that you interviewed them in the
         summer of 1993, were you aware that they had grievances
         regarding the reduction in force?

    A.   But that was under a different area.  I was aware that
         they had grievances.

(*Id.* at 63-64.)

    Q.   Okay.  When you referred earlier to a grievance, were you
         referring to an internal University grievance?

    A.   That's correct.

    Q.   Did you ever see that grievance?

    A.   No I didn't.

    Q.   And did you just assume that it related to their being
         laid off?

    A.   That's correct.

    Q.   Okay.  You were not involved in that grievance process?

    A.   No.

(*Id.* at 69.)

When the foregoing deposition testimony is viewed in conjunction with Darnell's claim that he complained to Rosemary Denby about the alleged gender discrimination (Darnell affidavit ¶ 4), this court finds genuine issues of material fact regarding

12

Denby's awareness of plaintiffs' complaints of discrimination to University officials. Thus, plaintiffs have presented sufficient evidence to establish a causal connection between their complaints and the University's refusal to rehire them.

### B. Legitimate Nondiscriminatory Reason

The University states neither plaintiff was hired because it offered employment only to

> the applicants whom Ms. Denby thought, as a whole, were the most qualified. Ms. Denby based her decision on the applicants' minimum qualifications for the job, the applicants' resume and application, and her perception based on the applicant's interview.

(Brief in support of summary judgment at 14.) Plaintiffs respond that, "[o]ther than Denby's subjective judgment, the defendants submitted no evidence that the other persons selected for the position of residential hall counselors were better qualified than Ford or Darnell." (Brief in opposition to summary judgment at 13.)

Defendant's burden of articulating a legitimate, nondiscriminatory reason is "exceedingly light." *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989). Even so, this court may not accept an articulated reason which "is so subjective as to be incapable of objective evaluation." *Hill v. Seaboard Coast Line Railroad Co.*, 885 F.2d 804, 809 n.7 (11th Cir. 1989); *Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1011 (11th Cir. 1984).

This court finds that defendant's stated reasons for refusing to hire Ford and Darnell are "so subjective as to be incapable of

13

objective evaluation." Rosemary Denby claims that she relied upon objective factors (*i.e.*, the plaintiffs' resumes and applications) when making her employment recommendations. Yet, defendant points to no objective differences between the resumes and applications of plaintiffs and the individuals ultimately hired for the residence hall positions: *i.e.*, there is no evidence that those selected for the job possessed more experience, education, or other skills which warranted their selection.

Subjective hiring criteria were discussed by the Eleventh Circuit in *Fowler v. Blue Bell, Inc.*, 737 F.2d 1077 (11th Cir. 1984). In that case, the hiring supervisor testified that plaintiff was not hired, because "his erratic work history, as well as his request for a wage of at least $1.80 per hour when the company was able to guarantee only the minimum wage of $1.60 per hour, indicated that 'he wouldn't stay with us long.'" *Id.* at 1010. The court found that "[t]he district court was presented with more than a supervisor's own subjective evaluation of an applicant's personality or desire for the job." *Id.* at 1011. Thus, the court concluded that the defendant's proffered reason was "not so incapable of objective evaluation as to render it inadequate to meet the defendant's burden of rebuttal." *Id.*

In contrast, this court has been presented with nothing "more than a supervisor's own subjective evaluation of an applicant's personality or desire for the job." Consequently, the University

14

has not met its burden of rebuttal, and summary judgment is inappropriate.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the __17th__ day of February, 1998.

                                                      United States District Judge

15